IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOWARD KIER, on Behalf of Plaintiff and the Class Members Described Below,<br><br>    Plaintiff,<br><br>  v.<br><br>OCWEN LOAN SERVICING, LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and FEDERAL NATIONAL MORTGAGE ASSOCIATION a/k/a FANNIE MAE,<br><br>    Defendants. | Case No. 15 C 1145<br><br>Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

On the day before his monthly deadline closed, Plaintiff Howard Kier ("Kier") was charged a $10 fee to make an online mortgage loan payment. Kier alleges that in assessing the fee, Defendants Ocwen Loan Servicing, LLC ("Ocwen"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Federal National Mortgage Association a/k/a Fannie Mae ("Fannie Mae") violated the Truth in Lending Act ("TILA") and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Kier also brings a claim for money had and received.

Before the Court is Defendants' Motion to Dismiss Kier's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 32]. For the reasons stated herein, Defendants' Motion is granted, and Kier's Amended Complaint is dismissed without prejudice.

## I. BACKGROUND

The Court draws the following facts from Kier's Amended Complaint. Kier is the borrower on a mortgage loan secured by his principal residence. The legal owner of the mortgage is MERS and the beneficial owner of the mortgage is Fannie Mae.

GMAC was the original servicer of the mortgage. Under GMAC, Kier had until the fifteenth of every month to make mortgage payments online. Sometime in 2014, Ocwen replaced GMAC as servicer.

On December 13, 2014, Kier attempted to make an online mortgage payment, but discovered that the online payment system was unavailable. When Kier attempted to pay again the following day, he learned that he would have to pay a $10 "rush processing fee" to have his payment considered timely. To avoid incurring a more costly late fee, Kier paid. In so doing, Kier also involuntarily entered into a payment arrangement with Ocwen. He was again charged the rush processing fee on January 13, 2015.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Camasta v. Jos. A. Bank*

*Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). However, a court need not accept as true "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

## III. ANALYSIS

### A. TILA

In Count I, Kier alleges that Fannie Mae and MERS, as owners of the loan acting through their agent Ocwen, violated TILA when they conditioned acceptance of Kier's December 2014 payment "as timely only upon payment of a fee." (Am. Compl. ¶ 49). Defendants argue that Count I should be dismissed because TILA does not prohibit the $10 "convenience" fee that Kier was charged. In any case, Defendants contend, Kier has no private right of action against Fannie Mae or MERS because neither is a creditor under TILA and assignee liability is inapplicable. Defendants additionally argue that Fannie Mae is shielded from liability under the *Merrill* doctrine because it is a federal instrumentality.

Congress enacted TILA in 1968 "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA's implementing regulations are set forth in Regulation Z, 12 C.F.R. Pt. 1026, which is accompanied by official

interpretations at 12 C.F.R. Pt. 1026, Supp. I, Pts. 1–5 (the "Official Interpretations"). The Seventh Circuit has indicated that the Official Interpretations are to be considered when evaluating an alleged TILA violation unless they are "demonstrably irrational." *Fridman v. NYCB Mortg. Co., LLC,* 780 F.3d 773, 776 (7th Cir. 2015), *reh'g denied* (Apr. 13, 2015).

Kier alleges that Fannie Mae and MERS violated the following provision of Regulation Z:

> No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(1)(iii) of this section.

12 C.F.R. § 1026.36(c)(1)(i); *see also,* 15 U.S.C. § 1639f(a) (imposing same requirement). The exception in subsection (c)(1)(iii) states that if the servicer specifies payment requirements in writing, but accepts a payment that does not conform, it may credit the payment as late as five days after receipt. The Official Interpretations offer further guidance:

> Under § 1026.36(c)(1)(i), a mortgage servicer must credit a payment to a consumer's loan account as of the date of receipt. This does not require that a mortgage servicer post the payment to the consumer's loan account on a particular date; the servicer is only required to credit the payment as of the date of receipt. Accordingly, a servicer that receives a payment on or before its due date (or within any grace period), and does not enter the payment on its books or in its system until after the payment's due date (or expiration of any grace period), does not violate this rule as long as the entry does not result in the imposition of a late charge, additional interest, or similar penalty to the consumer, or in the reporting of negative information to a consumer reporting agency.

Official Interpretations at § 1026.36(c)(1)(i) ¶ 1. The "date of receipt" is the date when a consumer's payment instrument reaches the mortgage servicer — not when the funds are actually collected. *Id.* ¶ 3.

*Fridman* recently illustrated the operation of § 1026.36(c)(1)(i) in practice. Elena Fridman had used her mortgage servicer's website to make an online payment on the penultimate day of her grace period. *Fridman,* 780 F.3d at 774. However, her servicer did not credit her payment for two days, resulting in a late fee of almost $90. *Id.* at 775. The Seventh Circuit held that Fridman's online payment was a "payment instrument or other means of payment" under TILA that had to be credited as soon as Fridman's authorization reached her mortgage servicer. *Id.* at 780. The Court rejected the servicer's argument that Fridman had "preauthorized" the removal of funds from her bank account, which would have allowed the servicer to treat the payment as received only upon the collection of funds from the bank. *Id.* at 778-79 ("If a consumer arranges with either her bank or a bill payment service to provide regular monthly payments to the mortgage servicer, then the servicer is entitled to credit the consumer's account only when it receives the check or [electronic fund transfer] from that third-party payor."); *see,* Official Interpretations at § 1026.36(c)(1)(i) ¶ 3.

Defendants argue that the $10 fee does not run afoul of Regulation Z or TILA because servicers and consumers can agree to the manner in which payments are to be made — including the application of a convenience fee for rush payments. "Because Regulation Z permits a

Official Interpretations at § 1026.36(c)(1)(i) ¶ 1. The "date of receipt" is the date when a consumer's payment instrument reaches the mortgage servicer — not when the funds are actually collected. *Id.* ¶ 3.

*Fridman* recently illustrated the operation of § 1026.36(c)(1)(i) in practice. Elena Fridman had used her mortgage servicer's website to make an online payment on the penultimate day of her grace period. *Fridman,* 780 F.3d at 774. However, her servicer did not credit her payment for two days, resulting in a late fee of almost $90. *Id.* at 775. The Seventh Circuit held that Fridman's online payment was a "payment instrument or other means of payment" under TILA that had to be credited as soon as Fridman's authorization reached her mortgage servicer. *Id.* at 780. The Court rejected the servicer's argument that Fridman had "preauthorized" the removal of funds from her bank account, which would have allowed the servicer to treat the payment as received only upon the collection of funds from the bank. *Id.* at 778-79 ("If a consumer arranges with either her bank or a bill payment service to provide regular monthly payments to the mortgage servicer, then the servicer is entitled to credit the consumer's account only when it receives the check or [electronic fund transfer] from that third-party payor."); *see,* Official Interpretations at § 1026.36(c)(1)(i) ¶ 3.

Defendants argue that the $10 fee does not run afoul of Regulation Z or TILA because servicers and consumers can agree to the manner in which payments are to be made — including the application of a convenience fee for rush payments. "Because Regulation Z permits a

servicer and a consumer to agree on the terms of electronic mortgage payments," Defendants contend, "it stands to reason that the servicer and the consumer can also agree to a convenience fee associated with those payments." (Def.'s Mem., ECF No. 57, at 6.) Kier maintains that consumers cannot waive TILA's protections by agreement unless the statute expressly allows them to do so.

TILA allows servicers to specify the terms in which a payment may be made. *See,* 12 C.F.R. § 1026.36(c)(1)(iii) (indicating that servicers may "specif[y] in writing requirements for the consumer to follow in making payments"); Official Interpretations at § 1026.36(c)(1)(iii) ¶ 1 ("The servicer may specify reasonable requirements for making payments in writing."); *Fridman,* 780 F.3d at 782 (Easterbrook, J., dissenting) ("[A] servicer may require customers to pay using a menu of ways that it specifies."). In the absence of specific requirements, or an agreement to electronic fund transfer, the servicer must accept payment "by cash, money order, draft, or other similar instrument in properly negotiable form." Official Interpretations at § 1026.36(c)(1)(iii) ¶ 3. There is no requirement under TILA or Regulation Z that servicers accept payment by credit or debit card, *see, id.; Fridman,* 780 F.3d at 782 (Easterbrook, J., dissenting), or that they offer consumers the ability to make online payments free of charge.

Kier argues that consumers cannot agree to waive the rights that TILA guarantees, including the right to same-day crediting under § 1026.36(c)(1)(i). TILA provides that no provision of any mortgage loan agreement, or any other agreement between a consumer and creditor

relating to the loan, "shall be applied or interpreted so as to bar a consumer from bringing an action" under TILA. 15 U.S.C. § 1639c(e)(3). By charging a $10 fee for same-day payment crediting, Kier argues, Defendants have asked consumers to "negotiate away [their] rights under TILA." (Pls.' Resp., ECF No. 62, at 7.)

The Court finds Kier's argument untenable in light of the plain language of the statute. Section 1026.36(c)(1)(i) prohibits servicers from refusing "to credit a periodic payment to the consumer's loan account as of the date of receipt." Regulation Z thus guarantees a consumer the right to have her mortgage payment credited as soon as she authorizes payment. *See, Fridman*, 780 F.3d at 780. It does not, however, guarantee consumers the right to make online payments free of charge.

Congress prohibited such "pay-to-pay" fees in the consumer credit context in 2010, when the Credit Card Accountability Responsibility and Disclosure Act amended TILA as follows:

> With respect to a credit card account under an open end consumer credit plan, the creditor may not impose a separate fee to allow the obligor to repay an extension of credit or finance charge, whether such repayment is made by mail, electronic transfer, telephone authorization, or other means, unless such payment involves an expedited service by a service representative of the creditor.

15 U.S.C. § 1637(l). Although Congress could have made a similar prohibition against such fees in conjunction with mortgage loan payments, it did not.

In both *Fridman* and this case, a consumer made a mortgage payment on the second-last day of the payment period and was assessed a fee — but the similarities end there. Fridman was assessed a late fee

because her servicer did not count her payment as received until two days after she authorized it. By then, the grace period had ended and the servicer charged Fridman a late fee. In contrast, Kier was assessed a fee before his grace period expired in order to pay online. Nowhere in the Amended Complaint does Kier allege that Defendants delayed processing his payment or refused to credit his payment "as of the date of receipt." *See,* 12 C.F.R. § 1026.36(c)(1)(i).

The Seventh Circuit has indicated that the purpose of § 1026.36(c)(1)(i) is to protect consumers from incurring penalties as a result of delayed payment crediting:

> Reading TILA to require mortgage servicers to credit electronic authorizations when they are received protects consumers from this unwarranted — and possibly limit-less — delay. . . . TILA's requirement that servicers credit electronic authorizations when they are received provides legal assurance that consumers are not injured by delays that are out of their hands.

*Fridman,* 780 F.3d at 780. This interpretation is consistent with the Official Interpretations, which state that no TILA violation occurs when a servicer's delay does not result in late charges, additional interest, or similar penalties. Official Interpretations at § 1026.36(c)(1)(i) ¶ 1. In this case, however, there was no undue delay — merely the assessment of a fee for online payment.

As many courts have noted, "TILA . . . and its provisions, as well as Regulation Z, are remedial legislation, to be construed broadly in favor of consumers." *Rand Corp. v. Yer Song Moua,* 559 F.3d 842, 845 (8th Cir. 2009). However, the interpretation Kier advocates is too broad — it reads into the statute a requirement that does not exist. As one court stated succinctly, "the liberal construction canon

is not a judicial license to rewrite a statute to fit what a court thinks Congress should or might have said, but did not." *James v. Nationstar Mortg., LLC,* -- F.Supp.3d --, No. CIV.A. 14-0545-WS-N, 2015 WL 1038143, at *5 (S.D. Ala. Mar. 9, 2015). Kier has failed to state a claim under TILA because neither it nor Regulation Z prohibits the assessment of "rush processing" or "convenience" fees during a consumer's payment period. Because Kier has failed to state a claim under TILA, the Court need not address Defendants' remaining argument that Kier has no private right of action against Fannie Mae or MERS, or that the *Merrill* doctrine bars any claim against Fannie Mae.

### B.  State Law Claims

Kier's remaining claims, for violation of ICFA and "money had and received," arise under Illinois law. Although Kier does not state a basis for jurisdiction in the Amended Complaint, the civil cover sheet attached to the original Complaint indicates that jurisdiction is based on the federal question statute, 28 U.S.C. § 1331, which grants district courts original jurisdiction over all cases "arising under the Constitution, laws, or treaties of the United States." While 28 U.S.C. § 1367(a) gives district courts supplemental jurisdiction over related claims forming part of the same case or controversy, "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Companies Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994). District courts may retain supplemental jurisdiction, however, if

factors such as judicial economy, convenience, fairness, and comity support it. *Id.*

Here, none of the above factors support this Court's retention of supplemental jurisdiction over Kier's remaining ICFA and money had and received claims. Judicial economy would not be served because few judicial resources have been committed to this action since its filing in February. Convenience would not be served because no interpretation of state law clearly "knocks out" Kier's claims at this stage. *See, Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir. 1997). Finally, fairness and comity would not be served because the remaining claims are rooted firmly in Illinois law, and the state court would be better suited to discern whether a fee for an online mortgage payment amounts to an unfair practice under ICFA or whether that fee "in equity and good conscience" should return to Kier. *See, Butitta v. First Mortg. Corp.,* 578 N.E.2d 116, 119 (Ill. App. Ct. 1991). Accordingly, under 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Kier's remaining state-law claims.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion to Dismiss [ECF No. 57] is granted. Although the Court is doubtful that amendment will save Kier's TILA claim — and has not addressed whether TILA even permits a cause of action against Fannie Mae or MERS — it is not "certain from the face of the complaint" that amendment would be futile. *See, Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 687 (7th Cir. 2004). Kier's Amended Complaint is

- 10 -

therefore dismissed without prejudice for fourteen (14) days. If Kier does not seek leave to amend within this timeframe, this dismissal will convert into a dismissal with prejudice.

**IT IS SO ORDERED.**

                                  Harry D. Leinenweber, Judge
                                  United States District Court

Dated: 8/17/2015